FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAY 1 1 2004

JAMES R. LARSEN, CLERK
_____ DEPUTY
YAKIMA, WASHINGTON

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PACIFIC AEROSPACE & ELECTRONICS, INC., a Washington corporation, | No. CS-02-412-AAM |
| Plaintiff, | **ORDER GRANTING MOTION FOR CONTEMPT** |
| v. | |
| EDWARD TAYLOR, an individual; KRISTEN TAYLOR, an individual; JAMES PETRI, an individual; RAAD TECHNOLOGIES, INC., a Washington corporation; | |
| Defendants. | |

Hearing was held on April 20, 2004 regarding plaintiff's Motion For Contempt (Ct. Rec. 192). Harry Korrell, Esq., and Douglas J. Morrill, Esq., appeared for plaintiff. Bryce J. Wilcox, Esq., appeared for defendants Edward Taylor and James Petri and for SRI Hermetics, Inc. Defendants Taylor and Petri testified, as did Rodney Arena and Darrell Anderson. Oral summations were presented by counsel on April 30.

**I. BACKGROUND**

On March 15, 2004, the court entered an "Order Granting

**ORDER GRANTING MOTION FOR CONTEMPT-**      **1**

1  Plaintiff's Ex Parte Motion For A Temporary Restraining Order"
2  (Ct. Rec. 186).  The order authorized Blank & Associates, P.S.
3  "as officers of the Court, to enter Defendants' business premises
4  and inspect any files, equipment, computers, and computer
5  systems."  The inspection was to be conducted by Eric P. Blank
6  who was to be accompanied by plaintiff's counsel.  The court
7  granted the order based on declarations of Rodney Arena and
8  Darrell Anderson who had been principals along with defendants
9  Taylor and Petri in defendant RAAD Technologies, Inc..  Arena and
10  Anderson asserted Taylor and Petri, in various respects, had
11  violated the Consent Decree entered by this court on November 24,
12  2003 (Ct. Rec. 171).  The TRO was entered ex parte based on the
13  court's finding that if Taylor and Petri had been given notice of
14  the motion for TRO, it would have allowed them an opportunity, if
15  they were so inclined, to secret or destroy evidence before there
16  was an opportunity to conduct the inspection and
17  ascertain/confirm violations of the Consent Decree.  Blank
18  attempted to perform the inspection of defendants' "business
19  premises" on March 18, 2004, but defendants did not allow him to
20  enter said premises.

21      On April 22, 2004, this court entered an order denying
22  defendants' motion to amend/clarify the TRO and the motion of
23  defendants' present employer, SRI Hermetics, Inc., for a
24  protective order relating to the inspection (Ct. Rec. 242).
25  Pursuant to the order, Mr. Blank was allowed to resume the
26  inspection effort at 474 Highline, Suite B, East Wenatchee,
27
28  **ORDER GRANTING**
   **MOTION FOR CONTEMPT-**            **2**

1 | Washington, on a date and time of plaintiff's choosing.  At the
2 | April 30 hearing, plaintiff's counsel advised that Blank still
3 | had not conducted the inspection.  Because of the lapse of time
4 | and this disposition of the motion for contempt, plaintiff shall
5 | file a new application with the court seeking authorization for
6 | any renewed effort to conduct an inspection of defendants'
7 | business premises.

8 |

9 | **II. DISCUSSION**

10 |      The object of punishment in a civil contempt proceeding is
11 | the enforcement of the rights and remedies of a litigant.
12 | Therefore, the relief granted is compensatory or conditional,
13 | often taking the form of a fine in the amount of damage sustained
14 | by the plaintiff and an award of costs and attorney fees.  11A
15 | Wright, Miller & Kane, <u>Federal Practice and Procedure</u>, §2960 at
16 | pp. 369-70 (2nd Ed. 1995).  Plaintiff must establish one or more
17 | alleged civil contempts by clear and convincing evidence in order
18 | to justify imposition of sanctions.  <u>Whittaker Corp. v. Execuair</u>
19 | <u>Corp.</u>, 953 F.2d 510, 517 (9th Cir. 1992).  While good faith is
20 | not a defense per se to civil contempt because disobedience of
21 | the court's order need not be willful, the Ninth Circuit has
22 | stated that a person should not be held in contempt if his action
23 | appears to be based on good faith and a reasonable interpretation
24 | of the court's order.  <u>Go-Video, Inc. v. Motion Picture</u>
25 | <u>Association of America</u>, 10 F.3d 693, 695 (9th Cir. 1993) (aka <u>In</u>
26 | <u>re Dual-Deck Video Cassette Recorder Antitrust Litigation</u>).

27 |

28 | **ORDER GRANTING**
   | **MOTION FOR CONTEMPT-**               **3**

1    Plaintiff seeks contempt sanctions for two distinct things:
2  1) defendants' refusal to comply with the March 15, 2004 ex parte
3  TRO allowing inspection of defendants' "business premises" and 2)
4  violation of the November 24, 2003 Consent Decree.  The sanctions
5  sought include:  1) that by virtue of defendants' refusal to
6  allow the inspection on March 18, plaintiff be entitled to a
7  conclusive presumption that defendants are in possession of
8  confidential Pacific Aerospace and Electronics (PAE) information
9  and property; 2)  that plaintiff be awarded $250,000 in
10 attorney's fees and costs for violation of the Consent Decree, as
11 provided for in Paragraph 23 of the decree, as well as additional
12 attorney's fees and costs incurred in bringing the ex parte
13 motion, attempting to execute the same, and in bringing the
14 motion for contempt; and 3) that defendants Taylor and Petri be
15 enjoined from employment with, or work for, any entity in the
16 hermetic connector industry for a period of two years.

17

18    **A. Ex Parte TRO**

19    Taylor and Petri did not comply with the TRO and therefore,
20 the only issue is whether their failure to comply was based on
21 good faith and a reasonable interpretation of the TRO.
22 Many of the reasons the court gave in its April 22 order for
23 denying SRI's motion for protective order and for denying
24 defendants' motion to amend/clarify TRO refute the notion that
25 defendants' refusal to comply with the TRO was in good faith and
26 based on a reasonable interpretation thereof.  Those reasons are

27
28 **ORDER GRANTING**
   **MOTION FOR CONTEMPT-**          **4**

1 │ recounted here, but there are additional reasons for finding
2 │ defendants' refusal to comply with the TRO warrants civil
3 │ contempt sanctions.

4 │     Although the TRO did not specify the address of "Defendants'
5 │ business premises," there was no dispute at the time the TRO was
6 │ entered that Taylor and Petri were working for SRI and no reason
7 │ to believe they could be found at any "business premises" other
8 │ than the facility located at 474 Highline Drive, Suite B, East
9 │ Wenatchee, Washington.  The lease for these premises names
10 │ Hermetic Design Concepts (HDC) as the lessee and is signed by
11 │ defendant Taylor on behalf of HDC.  (Ex. 1 to "Declaration of
12 │ Douglas J. Morrill Regarding Exhibits To Plaintiff's Reply In
13 │ Support Of Its Motion For Contempt," Ct. Rec. 240).  Only Taylor
14 │ and Petri were on these premises at the time Blank sought to
15 │ conduct the inspection on March 18.

16 │     The court is not impressed by Defendants' attempt to hide
17 │ behind SRI.  The Consent Decree prohibits Taylor and Petri from
18 │ using PAE information for their benefit or for the benefit of any
19 │ other entity, such as SRI. Taylor and Petri work for SRI.  An
20 │ order which would have required only Taylor's and Petri's
21 │ property be searched, and not the property of their employer SRI,
22 │ would clearly have been inadequate because it would have allowed
23 │ Taylor and Petri to conceal PAE information if they were so
24 │ inclined.  To the extent Taylor and Petri were legitimately
25 │ concerned about SRI's confidential and proprietary information
26 │ being compromised, they were required to yield such concern to
27 │
28 │ **ORDER GRANTING**
   │ **MOTION FOR CONTEMPT-**                    **5**

1  compliance with the TRO.

2      This is particularly so because of the protective provisions
3  contained in the TRO.  The TRO required Blank & Associates (B&A)
4  to immediately place in sealed containers all the data collected
5  during the inspection and hold it "until such time as
6  arrangements [could] be made between Plaintiff and Defendants for
7  B & A to inspect, search, and copy the contents."  B & A was not
8  to provide anything to plaintiff absent further court order, and
9  counsel for the parties were not to have access to the data until
10 10 days after completion of the inspection.  These provisions
11 afforded SRI a reasonable opportunity to seek a protective order
12 prior to Blank & Associates, plaintiff's counsel, or the
13 plaintiff looking at any material obtained during an inspection.

14     Furthermore, while defendants claim they were concerned
15 about losing their employment with SRI if the inspection had
16 taken place and confidential SRI information somehow revealed to
17 plaintiff, defendants had just as much reason to be concerned
18 about losing their employment by not allowing the inspection.
19 SRI was aware of the Consent Decree when it hired defendants.
20 (Twombly Declaration at Ct. Rec. 204).  Defendants' compliance
21 with the Consent Decree was a condition of their employment with
22 SRI.  (Taylor Declaration at Ct. Rec. 216).

23     Taylor says that when Blank introduced himself to Taylor on
24 March 18, 2004, "Taylor immediately recognized him as being the
25 computer forensic attorney that offered testimony against
26 Defendants earlier in this case."  Even so, the court was not

27
28 **ORDER GRANTING**
   **MOTION FOR CONTEMPT-**              **6**

1  presented with any evidence that Blank would have been unable to
2  function as a neutral officer of the court as provided for in the
3  TRO and as insured by the aforementioned protective provisions.

4      On March 18, Blank was accompanied by Douglas Morrill, one
5  of the plaintiff's attorneys.  This was specifically authorized
6  by the TRO.  Fed. R. Civ. P. 34(a) states a party may serve on
7  any other party a request to permit entry upon designated land or
8  other property in possession or control of the party upon whom
9  the request is served for the purpose of inspection and
10 measuring, surveying, photographing, testing or sampling the
11 property or any designated object or operation thereon.  There is
12 no doubt defendants were in possession or control of the
13 premises, even if the premises were being operated as an SRI
14 facility and SRI was paying the rent.  Allowing Morrill to
15 accompany Blank was well within the court's authority.  Moreover,
16 Morrill was obligated not to disclose information to his client
17 other than information belonging to his client.

18     The fact law enforcement authorities did not assist Blank in
19 serving the TRO on defendants is inconsequential.  The TRO
20 provided that "any and all law enforcement agencies within the
21 jurisdiction of this Court, specifically including the Wenatchee
22 Police Department and any other police departments located in
23 County of Chelan, Washington, shall accompany and assist B & A
24 during Service and execution of this Order . . . ." The TRO did
25 not require execution by law enforcement.  It only directed law
26 enforcement assistance if plaintiff decided such assistance was
27

28 **ORDER GRANTING**
   **MOTION FOR CONTEMPT-**                 **7**

1  necessary.

2      On March 18, Blank and Morrill attempted to arrange a
3  telephone conference with the court for the purpose of having the
4  court speak to defendants about complying with the order.
5  Defendants were told by Blank and Morrill that they were trying
6  to arrange such a call.  The fact such a call did not take place
7  does not justify defendants' failure to comply with the TRO.
8  Defendants are college-educated gentleman who simply by reading
9  the TRO could have easily understood its terms.  There was no
10  need for the court to verbally repeat to defendants what was
11  already clearly directed in writing.  And if defendants at all
12  questioned the authenticity of the TRO, they needed do no more
13  than call the District Executive to verify the same.

14      The purpose of the TRO "was to prevent the destruction or
15  concealment of papers, documents, files, electronically stored
16  information and equipment taken from or belonging to PAE in
17  violation of the parties' Consent Decree."  Defendants maintain
18  neither of them have destroyed or concealed anything belonging to
19  PAE.  Defendants apparently want the court to accept them at
20  their word.  As discussed below, however, the defendants lack
21  credibility.  The very purpose of the TRO was to ascertain and/or
22  confirm by surprise inspection whether defendants were concealing
23  anything belonging to plaintiff.  By not obeying the court's TRO
24  on March 18, the defendants did not give plaintiff the
25  opportunity the court had granted plaintiff.  Defendants did not
26  "substantially comply" with the TRO.  They did not comply with it

27

28  **ORDER GRANTING**
   **MOTION FOR CONTEMPT-                8**

1 at all.[1]

2 There is "clear and convincing" evidence that Taylor and
3 Petri are in civil contempt for failure to comply with the TRO.
4 Their failure to comply was not based on good faith and a
5 reasonable interpretation of the TRO. Indeed, as discussed
6 below, it is apparent their failure to comply with this order was
7 simply the culmination of a pattern of their deciding for
8 themselves which legal obligations they would comply with and to
9 what extent. Based on this contempt alone, Taylor and Petri will
10 be required to pay plaintiff its reasonable attorney's fees and
11 costs incurred in bringing the ex parte TRO motion, attempting to
12 execute the same, and in bringing the motion for contempt.

13

14 **B. Consent Decree**

15 Plaintiff alleges defendants violated the Consent Decree by:
16 (1) keeping copies of confidential PAE documents that should have
17 been turned over to plaintiff; (2) continuing to possess stolen
18 PAE equipment and parts; (3) maintaining on their computers
19 stolen PAE information about its manufacturing process and
20 protocols; and (4) shipping parts to PAE customers.

21

22 [1] Both Taylor and Petri were present on the morning the
inspection was attempted. It appears Taylor spoke with Blank and
23 took responsibility for defendants' response to the TRO. That
does not, however, excuse Petri from responsibility. His attempt
24 to bury his head in the sand by asserting in his declaration (Ct.
Rec. 215) that he "was never asked permission to allow Mr. Blank
25 or his associates access . . ., nor did [he] ever deny access to
anyone" does not carry any weight with the court. Apparently,
26 Petri did not even bother to read the court's order on the
morning of March 18.
27

**ORDER GRANTING**
28 **MOTION FOR CONTEMPT-**          9

1    By virtue of defendants' failure to comply with the order
2  allowing an inspection of their business premises, plaintiff asks
3  the court for a conclusive presumption that defendants are in
4  possession of confidential PAE information and property.  While
5  this may well be justified[2], the court need not rely on such a
6  presumption to find that defendants have violated the Consent
7  Decree.

8    In determining there have been violations of the Consent
9  Decree, the court is forced to determine who is more credible:
10 Arena and Anderson or defendants Taylor and Petri.  Having had an
11 opportunity to hear each of them testify and observe their
12 demeanor, the court ultimately concludes Arena and Anderson are
13 more credible.  At the outset, some general observations are
14 appropriate.

15   As noted above, Taylor and Petri have enjoyed the benefit of
16 a college education.  They are articulate and intelligent.  They
17 obviously possess a higher level of sophistication than Arena or
18 Anderson, especially in the hermetic connector field.  While
19 Taylor and Petri attempted to paint Arena as the driving force at
20 RAAD Technologies, it is apparent Taylor was calling most, if not
21 all, of the shots.  This is perhaps best evidenced by the fact

22

23  [2]  As plaintiff points out, Fed. R. Civ. P. 37(b)(2)(A)
provides that an appropriate sanction for failure to obey an
order to provide or permit discovery is entry of an order that
24 "the matters regarding which the order was made or any other
designated facts shall be taken to be established for the
25 purposes of the action in accordance with the claim of the party
obtaining the order."  The TRO was essentially an order
26 permitting discovery to ascertain/confirm Consent Decree
violations claimed by the plaintiff.

27
**ORDER GRANTING**
28 **MOTION FOR CONTEMPT-**          **10**

1 | that when RAAD Technologies was formed, the proposed distribution
2 | of shares in the company was such that Taylor would receive the
3 | vast majority of the shares, even if only in the form of options.
4 | (Ex. 5 to "Declaration of Douglas J. Morrill Regarding Exhibits
5 | To Plaintiff's Reply In Support Of Its Motion For Contempt," Ct.
6 | Rec. 240).[3]  Furthermore, during their testimony, Arena and
7 | Anderson were willing to concede things they did not know or
8 | understand, whereas Taylor and Petri had a sure answer for
9 | everything.  For example, Arena was willing to concede that a
10 | statement in his declaration that Taylor had actually "used" the
11 | card file in November 2003 was not accurate because he did not
12 | have such knowledge.  Arena maintained, however, that Taylor did
13 | possess the card file.

14 |      The court is very cognizant of the fact that Arena's
15 | previous conduct on behalf of defendant RAAD Technologies was not
16 | in compliance with RAAD's discovery obligations, nor in
17 | compliance with the court's June 20, 2003 preliminary injunction
18 | (Ct. Rec. 86).[4]  In its October 10, 2003 "Order Re Contempt,"
19 | (Ct. Rec. 163), this court rejected Arena's interpretation of the
20 | preliminary injunction regarding RAAD's contact with PAE

21 |
      [3]  At the April 20 hearing, Taylor admitted he had not
22 | turned this document over to PAE in the pre-Consent Decree
      litigation, claiming he did not think it had any relevance.  This
23 | is another example, as discussed below, of the defendants
      deciding for themselves how they should interpret discovery
24 | requests and court orders.

25 |      [4]  During his deposition, Arena admitted he offered
      untruthful testimony in depositions and declarations he had given
26 | prior to entry of the Consent Decree.  (Arena Dep. at p. 183, Ex.
      2 to Morrill Declaration at Ct. Rec. 240).
27 |
      **ORDER GRANTING**
28 | **MOTION FOR CONTEMPT-**              **11**

1   customers and found RAAD, as well as defendants Taylor and Petri,
2   in contempt.  Even so, the court is persuaded that since October
3   2003, Arena has made a sincere effort to "toe the line" drawn by
4   the court and the Consent Decree, whereas for Taylor and Petri it
5   has simply been more of the same in deciding for themselves what
6   really is PAE's confidential and proprietary information and who
7   really are PAE's customers.

8       It is true that since the dissolution of RAAD Technologies,
9   Arena has developed a business relationship with PAE through RAAD
10  Industries regarding certain aircraft work.[5]  Thus far, Arena
11  indicates he has done $3,000 of such work for PAE and
12  acknowledged the potential for more.  (Arena Dep. at pp. 50-56,
13  Ex. 2 to Morrill Declaration at Ct. Rec. 240).  It is also true,
14  however, that RAAD Industries did machining work for PAE work
15  long before the formation of RAAD Technologies by Arena,
16  Anderson, Taylor and Petri.  (Arena Dep. at p. 22).

17      Another thing which counters the notion that Arena would
18  sell out Taylor and Petri for RAAD Industries' pecuniary gain is
19  the fact that if Taylor and Petri violated the Consent Decree, so
20  did RAAD Technologies because those violations occurred while
21  Taylor and Petri were principals of RAAD Technologies.  That
22  means RAAD Technologies and its assets, whatever remain, are
23  available to satisfy any judgment PAE obtains for violation of

24

25      [5]  RAAD Industries is an entity separate from RAAD
26  Technologies.  It existed before RAAD Technologies was formed and
    is in the business of the precision machining of parts.
27
    **ORDER GRANTING**
28  **MOTION FOR CONTEMPT-**            **12**

1  the Consent Decree.[6]  Arena and Anderson were also principals in
2  RAAD Technologies and their interest in whatever remains in this
3  entity is subject to being taken by PAE in satisfaction of a
4  judgment for violation of the Consent Decree.  Taylor and Petri
5  state Arena and Anderson were dissatisfied with the financial
6  affairs of RAAD Technologies, specifically concerning the
7  respective liabilities of Taylor and Petri, and assert that is
8  the real reason they accused Taylor and Petri of Consent Decree
9  violations.  In light of the potential liability of RAAD
10  Technologies for such violations, however, the court does not
11  believe Arena and Anderson concocted allegations of Consent
12  Decree violations by Taylor and Petri because of their
13  dissatisfaction with Taylor and Petri over the "money matters" of
14  RAAD Technologies.[7]  In the end, the court finds the Consent
15  Decree violations by Taylor and Petri were likely just as
16  significant a factor in the dissolution of RAAD Technologies as
17  were the disagreements by the principals concerning finances of
18  the company.

19      Arena and Anderson simply do not have as much to gain by
20  falsely accusing Taylor and Petri of Consent Decree violations as

21
22  [6] RAAD Technologies is a party to the Consent Decree and apparently both Arena and Anderson signed the precursor Settlement Agreement on behalf of RAAD Technologies.  (Anderson
23  Dep. at p. 80, Ex. 3 to Morrill Declaration; Arena Dep. at p. 79, Ex. 2 to Morrill Declaration).  The court is not aware that the
24  Settlement Agreement provides for any potential individual liability for Anderson or Arena for breach of its terms.
25
26  [7] Currently pending is a civil lawsuit by Arena and Anderson against Taylor and Petri relating to the dissolution of RAAD Technologies.
27
**ORDER GRANTING**
28 **MOTION FOR CONTEMPT-**          **13**

 1  Taylor and Petri have to gain by lying about such violations.  If
 2  violations are established, Taylor and Petri face potential loss
 3  of their employment with SRI, as well as individual liability for
 4  a substantial amount of attorney's fees and costs.  And as
 5  plaintiff points out, a monetary judgment against Taylor and
 6  Petri in their individual capacities potentially lessens the pool
 7  of assets available to Arena and Anderson should they obtain a
 8  judgment against Taylor and Petri in the separate litigation
 9  concerning the dissolution of RAAD Technologies.  In other words,
10  Taylor and Petri have a significantly greater incentive to
11  distort the truth.

12      Any discussion of the Consent Decree must recognize that it
13  was developed by the parties.  They fashioned it terms, consented
14  to its conditions, and presented it to the court without
15  reservation.  The decree does not leave Taylor and Petri any room
16  to decide what is PAE information and equipment which needs to be
17  returned to PAE.  Nor does it leave them any discretion with
18  regard to who are PAE customers with whom they may not have
19  contact.  The decree states in clear and unambiguous terms that
20  defendants are to deliver to their counsel **"any and all**
21  information, documents of any kind . . . or record of information
22  in **any** form taken from PAE or pertaining to PAE or its business
23  with it customers as well as **any and all** copies of such materials
24  . . . ."  (Paragraph 22(d) of Consent Decree at p. 7)(Emphasis
25  added).  In clear and unambiguous terms, the decree enjoins
26  defendants for a period of 18 months from soliciting or doing
27
    **ORDER GRANTING**
28  **MOTION FOR CONTEMPT-**          **14**

1 business with PAE customers set forth on a list designated as Ex.
2 A to the decree. (Paragraph 22(a) of Consent Decree at p. 6).
3 Santa Barbara Focal Plane is on that list.

4      In its October 10, 2003 "Order Granting Motion For Partial
5 Summary Judgment" (Ct. Rec. 164), this court modified its June
6 2003 preliminary injunction to prohibit defendants from
7 soliciting, contacting, or conducting any further business with
8 Santa Barbara Focal Plane (SBFP). Shortly after that, settlement
9 negotiations ensued between the parties, resulting in a
10 Settlement Agreement which was executed by PAE on November 10
11 (Declaration of Lew Wear at Ct. Rec. 179) and by the defendants
12 on November 19 (Taylor Declaration at Ct. Rec. 216; Petri
13 Declaration at Ct. Rec. 215). The Settlement Agreement, of
14 course, called for entry of the aforementioned Consent Decree
15 which was accomplished by this court on November 24. Despite the
16 court's order, the Settlement Agreement, and then the Consent
17 Decree, defendants went right ahead and conducted further
18 business with SBFP on or about the date the decree was entered.
19 Taylor and Petri do not dispute this, although they claim
20 Anderson and Arena also agreed to it. Taylor and Petri knew it
21 was improper to conduct business with SBFP and hence, a scheme
22 was concocted to make it appear RAAD Technologies was not
23 conducting business with SBFP. The parts were shipped by a third
24 party, Process Logic, to Petri's home and then returned to
25 Process Logic on November 25, 2003, identifying Petri as the
26 sender and using SBFP's Federal Express account number. At the
27

**ORDER GRANTING**
28 **MOTION FOR CONTEMPT-**        **15**

1 | April 20 hearing, Petri was asked why the parts were sent to his
2 | home.  He responded he had no idea and furthermore, that he did
3 | not know how Process Logic obtained his home address.  Petri's
4 | testimony defies belief.  Both Taylor and Petri claim no money
5 | was received by them or RAAD Technologies for welding the parts
6 | for SBFP, but even if true (and the court has its doubts), this
7 | ignores the goodwill established with a forbidden customer.
8 | Defendants did business with SBFP in violation of the Consent
9 | Decree even if money did not change hands.

10 | Arena says that while at RAAD Technologies, Taylor had PAE
11 | files in his possession.  According to Arena, one of the files
12 | Taylor left behind following his departure from RAAD in December
13 | 2003 was the Ball Aerospace file.  (Ex. 2 attached to Declaration
14 | of Rodney Arena at Ct. Rec. 196 and Praecipe at Ct. Rec. 212).
15 | The first page in the file contains the wording "PA&E-ID QUOTE
16 | REVIEW."  Taylor does not dispute that this file, as well as
17 | similar files, were in his possession during his tenure at RAAD
18 | Technologies.  During his testimony at the April 20 hearing,
19 | Taylor acknowledged he was sure PAE felt they owned the
20 | information contained in these files, but asserted the files were
21 | not associated with PAE's "document control system."  According
22 | to Taylor, they were not sales files or quote files, but rather
23 | what he termed "customer information files."  Taylor acknowledged
24 | he put these files together while he was employed at PAE and
25 | sometimes the information contained therein would later be
26 | transferred into a sales or quote file.  Whatever Taylor chooses
27 |
28 | **ORDER GRANTING**
**MOTION FOR CONTEMPT-**          **16**

to call these files, it is abundantly clear the information
contained therein falls in the Consent Decree category of "**any
and all** information, documents of any kind . . . or record of
information in **any** form taken from PAE or pertaining to PAE or
its business with it customers . . . ."  (Emphasis added).

Taylor's lack of candor and forthrightness with regard to
these "customer information files" is further revealed by certain
testimony he gave at the April 20 hearing.  Taylor was asked
whether in a prior deposition he recalled testifying he had no
additional PAE files.  Taylor responded that the question he was
asked was in regard to floppy disks he had in his possession and
so he construed the question as whether he had any more
electronic files in his possession.  Taylor acknowledged that at
the time he did have paper files, like the Ball Aerospace file,
in his possession.  He acknowledged those paper files were never
turned over during discovery in the pre-Consent Decree litigation
and he was "not sure" whether it was a lie when he and his
counsel at the time represented they had no additional documents
in response to plaintiff's discovery requests.  According to
Taylor, these files were not in his control for a "lengthy"
period of time because they were in the garage of Arena's friend.
(See Declaration of Jeff Strop at Ct. Rec. 239).  Taylor
testified he did not think he had access to these documents, but
also conceded he did not try to get them.  Considering Taylor's
prominent role in RAAD Technologies, it is inconceivable that
Taylor did not have access to the materials and could not have

ORDER GRANTING
MOTION FOR CONTEMPT-                    17

1  obtained them if he really wanted to.

2      Likewise, it is inconceivable in a closely-held corporation
3  with a limited number of shareholders that Taylor was not a fully
4  knowledgeable and consenting party to the "bat cave" arrangement.
5  Arena testified that Taylor and Petri referred to the home of
6  Petri's in-laws as the "bat cave" and stored PAE information
7  there after leaving their employment at PAE in August 2002.
8  According to Arena, after Thanksgiving weekend 2002 and the
9  commencement of this lawsuit, Taylor informed him Petri's in-laws
10  were getting nervous about this arrangement and so Taylor asked
11  if Arena knew of another place to store the material other than
12  at RAAD Technologies. Arena testified he and Taylor transported
13  the material to the garage of Arena's friend, Jeff Strop, and
14  then, early in 2003, returned the material to RAAD Technologies.
15  This deliberate concealment of information permeates the entire
16  issue of credibility in this case.

17      Taylor claims he destroyed the paper "customer information"
18  files sometime in the summer of 2003, but the existence of the
19  Ball Aerospace file refutes that claim. Moreover, if he did
20  destroy the files, that would be another example of Taylor's
21  cavalier attitude that he was the one who should decide what to
22  reveal and turn over to PAE, without input from PAE, the court,
23  his own counsel, or anybody else.

24      Yet another example of this attitude is how Taylor dealt
25  with the business card file he had developed while at PAE. He
26  admits that in January 2003, before he turned the business card

27
   **ORDER GRANTING**
28 **MOTION FOR CONTEMPT-**          **18**

1 │ file over to his counsel for discovery production, he made a copy
2 │ of it and gave it to Arena for use at RAAD Technologies.
3 │ Thereafter, he jotted down information on the file that would be
4 │ useful for Arena in soliciting business for RAAD.  Asked whether
5 │ this contravened his obligation not to directly or indirectly
6 │ solicit business for a PAE competitor, Taylor testified he could
7 │ not say at the time if he had really answered in his own mind
8 │ whether the business card file was public information.

9 │      Taylor, however, is not alone in this attitude.  Mr. Petri's
10 │ role in the SBFP transaction reveals he shared that attitude, as
11 │ is his acknowledgement that during Thanksgiving Weekend of 2002,
12 │ he discarded the hard drives on the computers at RAAD
13 │ Technologies, making it impossible to ever know if PAE
14 │ confidential and proprietary information was stored thereon.

15 │      Taylor's and Petri's conduct before the Settlement Agreement
16 │ was signed and before the Consent Decree was entered is clearly
17 │ relevant in assessing their credibility and determining whether
18 │ they violated the decree.  The court is entitled to look at
19 │ Taylor's and Petri's entire course of conduct in this litigation,
20 │ without being restricted to a narrow window of time commencing on
21 │ the date of the entry of the Consent Decree (November 24, 2003).

22 │      Considering Taylor's and Petri's prior conduct in the
23 │ litigation, the direct evidence of their Consent Decree
24 │ violations by virtue of the SBFP transaction and retention of PAE
25 │ "customer information" files, and their lack of credibility
26 │ established thereby, the court has little difficulty in finding

27 │
28 │ **ORDER GRANTING**
   │ **MOTION FOR CONTEMPT-**          **19**

1 | there is compelling circumstantial evidence that after the
2 | Settlement Agreement was signed and the Consent Decree entered:
3 | 1) Taylor and/or Petri had PAE parts and manufacturing equipment
4 | in their possession which they brought with them to RAAD
5 | Technologies from PAE, including the Wedgetail housing[8], the
6 | sensitive scale, and the kilns[9]; 2) Taylor himself had a copy of
7 | the PAE business card file in his possession, in addition to the
8 | copy he claims he discovered in his litigation file after March
9 | 18, 2004; and 3) RAAD was using shop processes which Petri had
10 | developed from PAE confidential and proprietary information.[10]

11 | There is "clear and convincing" evidence that defendants
12 | violated the Consent Decree and most, if not all, of the
13 | violations were willful. To the extent some violations may have

14 |
15 | [8] Both Arena and Anderson testified Taylor and Petri
brought PAE parts with them because those parts were not at RAAD
Industries before Taylor and Petri arrived and RAAD Technologies
16 | was formed. (Anderson Dep. at p. 40; Arena Dep. at p. 134).

17 | [9] Taylor asserts the scale and the kilns were essentially
junk discarded by PAE and PAE should have known he had the items.
18 | The court is not so persuaded and finds this is yet another
example of Taylor deciding for himself what really belongs to PAE
19 | and what does not. There is no evidence that PAE explicitly or
implicitly consented to Taylor having these items.

20 |
21 | [10] Anderson's knowledge about this is based on certain
inferences he made, however those inferences are reasonable in
light of the corroborating declaration of Patrick Andrew
22 | Northwind who worked for RAAD Technologies from October 2002 to
March 2003 and with PAE for seven years prior to that. Due to
23 | their lack of credibility, Taylor's and Petri's attempts to
discredit Northwind, and Anderson for that matter, are not
24 | persuasive. Furthermore, the declaration of Stan McMillan does
not assist defendants in attempting to discredit Northwind
25 | because McMillan does not say he was ever employed at RAAD
Technologies. While he says he "spent time" at RAAD, he does not
26 | say how much time and when so as to allow him to assert PAE shop
processes were not used by RAAD.
27 |
**ORDER GRANTING**
28 | **MOTION FOR CONTEMPT-**             **20**

1  been merely "technical" or the product of "poor judgment," civil

2  contempt sanctions are nonetheless warranted since "willfulness"

3  is not required to impose such sanctions and the court finds no

4  evidence of good faith by the defendants or that they reasonably

5  interpreted the Consent Decree.[11]

6      For the violations of the Consent Decree, plaintiff asks to

7  be awarded the $250,000 in attorney's fees and costs provided for

8  in Paragraph 23 of the decree, the full text of which is set

9  forth in footnote 11 <u>supra</u>.  As an additional sanction, plaintiff

10

---

11      [11]  If there is "clear and convincing" evidence of Consent
Decree violations, the lesser "preponderance of evidence"

12  standard is also satisfied.  Plaintiff has framed its motion as
one for contempt, rather than one merely for enforcement of the

13  decree based on breach thereof.  It appears to the court that
plaintiff did not need to pursue contempt as the remedy for

14  breach of the decree.  Paragraph 23 of the Consent Decree
provides:

15

16          PAE is entitled under RCW 19.108.040
          to recover from defendants, <u>inter alia</u>, its

17          reasonable attorneys' fees and costs incurred
          in this matter, which the parties agree amount

18          to $250,000.  No judgment will be entered for
          such fees and costs unless a defendant is found

19          by the Court to have violated the terms of this
          order.  In that event, **in addition to any other**

20          **damages and contempt sanctions the Court deems**
          **appropriate**, Plaintiff will be permitted to

21          apply to the Court for its costs and fees
          incurred in this action (including in the

22          enforcement of this decree), and the Court
          will enter judgment in favor of PAE for $250,000

23          for its reasonable attorneys' fees and costs to
          date, plus any additional amounts incurred in

24          the enforcement of this Decree.

(Emphasis added).

25

26

27
**ORDER GRANTING**

28 **MOTION FOR CONTEMPT-**              **21**

1   asks that Taylor and Petri be enjoined from employment with, or
2   work for, any entity in the hermetic connector industry for a
3   period of two years.

4        The reasonable attorney's fees and costs awarded to
5   plaintiff for defendants' contempt of the TRO will undoubtedly be
6   substantial.  Adding $250,000 in fees and costs for violation of
7   the Consent Decree gives the court some pause, especially if
8   Taylor and Petri are barred from any involvement in the hermetic
9   connector industry for a period of two years.  Without knowing
10  Taylor's and Petri's financial circumstances, or the financial
11  circumstances of RAAD Technologies, it appears that if for a two
12  year period Taylor and Petri could not do that for which they are
13  trained, they would have a difficult time earning a living and
14  having any reasonable chance of paying the fees and costs.

15       After giving the matter considerable thought, the court
16  believes the better course is to award plaintiff $125,000 in
17  attorney's fees and costs for violation of the Consent Decree,
18  with the $125,000 balance available in the event of any further
19  violations of the decree.  Hopefully, after this most recent
20  round of litigation, defendants will have adequate incentive for
21  scrupulously complying with the decree from here on out,
22  including compliance with those terms restricting what they can
23  do in the hermetic connector industry.  In the event of a further
24  violation, plaintiff can seek the $125,000 balance from
25  defendants without the need for and difficulty of proving actual
26  damages.  The court believes it has the discretion to award
27
28  **ORDER GRANTING**
    **MOTION FOR CONTEMPT-**          **22**

1 | relief in this fashion pursuant to the terms of the decree, as
2 | well as pursuant to its contempt authority which plaintiff has
3 | invoked.

4 |

5 | **III. CONCLUSION**

6 | Plaintiff's motion for contempt (Ct. Rec. 192) is **GRANTED.**
7 | Defendants Taylor and Petri are in contempt for refusal to
8 | comply with the March 15, 2004 ex parte TRO. For that contempt,
9 | Taylor and Petri shall pay to plaintiff its reasonable attorney's
10 | fees and costs incurred in bringing its motion for ex parte TRO,
11 | attempting to execute the same, and in bringing its motion for
12 | contempt. Within ten (10) calendar days of the date of this
13 | order, plaintiff's counsel shall serve and file an affidavit of
14 | said fees and costs incurred. At its option, plaintiff may also
15 | serve and file a supporting memorandum. Within ten (10) calendar
16 | days thereafter, defendants may serve and file any objection to
17 | the requested fees and costs. Within five (5) calendar days
18 | thereafter, plaintiff may serve and file a reply to any
19 | objections registered by defendants. Thereafter, the court will
20 | determine the amount awarded and enter judgment against Taylor
21 | and Petri, making them jointly and severally liable for the
22 | award.

23 | Defendants Taylor, Petri and RAAD Technologies, Inc., have
24 | violated the November 24, 2003 Consent Decree and are in contempt
25 | for those violations. For that contempt, Taylor, Petri and RAAD
26 | Technologies shall pay to plaintiff $125,000 in attorney's fees

27 |
28 | ORDER GRANTING
MOTION FOR CONTEMPT-                23

1  and costs pursuant to RCW 19.108.040 as provided for in Paragraph
2  23 of the Consent Decree.  Judgment shall be entered against
3  Taylor, Petri and RAAD Technologies for this amount.  They are
4  jointly and severally liable for the same.  The court retains
5  continuing jurisdiction over enforcement of the decree and for
6  any additional violations thereof, may award plaintiff the
7  balance of the attorney's fees and costs ($125,000) provided for
8  in Paragraph 23 of the Consent Decree, plus any other sanctions
9  warranted.

10      **IT IS SO ORDERED**.  The District Executive is directed to
11 enter this order and forward copies to counsel.

12          **DATED** this _11ᵗʰ_ of May, 2004.

13

14                          _Alan A. McDonald_ (signature)
                            ALAN A. McDONALD
15                     Senior United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27
    **ORDER GRANTING**
28  **MOTION FOR CONTEMPT-**              **24**